[No. B201886. Second Dist., Div. Four. Feb. 3, 2009.]

THE PEOPLE, Plaintiff and Respondent, v.
WAREES HASAN BEYAH, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

*Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of parts A. and C.

## COUNSEL

James Koester, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Lance E. Winters and J. Michael Lehmann, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**WILLHITE, J.**—Defendant Warees Hasan Beyah was convicted of possession of cocaine (Health & Saf. Code, § 11350, subd. (a)) and transportation of a controlled substance (Health & Saf. Code, § 11352, subd. (a)), and was sentenced to eight years in state prison. He appeals from the judgment, contending he received ineffective assistance of counsel and that the trial court erred by instructing the jury with a consciousness of guilt instruction. He also asks us to independently review the sealed transcript of the in camera hearing on his *Pitchess* motion[1] to determine whether the trial court disclosed all relevant complaints made against the deputies involved in his arrest. We affirm the judgment. We address only the consciousness of guilt instruction in the published portion of our opinion.

### FACTUAL BACKGROUND

Two versions of the facts were presented at trial: one told by the deputies who arrested defendant, and the other told by defendant. We begin with the version told by the deputies, which was, for the most part, accepted by the jury.

At approximately 9:40 a.m. on December 8, 2006, Los Angeles County Sheriff's Department Deputies Nader Chahine[2] and Alex Topete were on patrol in Compton. As they approached Atlantic Plaza—a strip mall at the corner of Atlantic Avenue and Compton Boulevard—they saw a Honda Accord turn into the driveway for the plaza and park in a parking stall. They noticed that the left taillight (or brake light) was not working; it did not light up when the brakes were applied. Deputy Chahine, who was driving, stopped the patrol car behind the Accord, walked to the car, and asked the driver for his license. The driver was defendant. Defendant told Deputy Chahine that he did not have a license. The deputy told defendant to get out of the car.[3] He

---

[1] *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 [113 Cal.Rptr. 897, 522 P.2d 305].

[2] There are two spellings of Deputy Chahine's name in the reporter's transcripts. The transcript for the suppression hearing held on May 30, 2007, indicates that he spelled his name "Nadar Chanine," while the transcript for the trial indicates he spelled his name "Nader Chahine." We will use the spelling from the trial transcript.

[3] At the suppression hearing, Deputy Chahine testified that after defendant told him he did not have a driver's license, he asked defendant if he was on parole or probation. When defendant admitted he was on parole, the deputy told defendant to step out of the car. The deputy did not mention this reason for asking defendant to step out of the car while testifying at trial because the court instructed him not to disclose defendant's parole status.

conducted a patdown search of defendant and found a bundle of money[4] and a baggie containing four packages of what was determined to be cocaine base in defendant's pants pockets. The deputy then conducted a search of defendant's car and found a baggie with 29 packages of what was determined to be cocaine base in the gas cap compartment. Based upon the deputy's training and experience, and the fact that the area in which defendant had parked was a high narcotics activity area, he concluded that defendant possessed the cocaine for sale.

Defendant's version of the facts was entirely at odds with the deputies' version. According to defendant, he drove his Honda Accord to Atlantic Plaza, arriving at around 7:00 a.m. on the day in question. He went into the doughnut shop there and bought coffee. He "lounged around" the doughnut shop for a while (on direct examination he said he was there for 20 to 30 minutes, but on cross-examination he said he was there for around 45 minutes). At around 8:00 a.m., he went to the nearby Dominguez Food Warehouse to purchase laundry soap, bleach, and other items, because he planned to do his laundry at the laundromat at the plaza. He was in the Food Warehouse for about 15 minutes, then went back to the doughnut shop to buy cigarettes, a lighter, and chewing gum. He spent some time talking to the women in the doughnut shop, then, at around 9:00, he went to his car and put the items he purchased at the Food Warehouse in the trunk. After putting the items in the trunk, he stood on the sidewalk in front of the laundromat and smoked a cigarette. Once he finished smoking, he walked toward his car to get his laundry from the trunk. As he approached his car, the deputies drove up in their patrol car, asked him what he was doing, and asked for his name. After he responded, the deputies got out of their car and told him to lean against the patrol car while they patted him down. They did not find anything, but nevertheless placed him in the backseat of their patrol car. One of the deputies told him he was going to write him a ticket for loitering, then "out of the blue" he asked defendant if the Honda Accord was his. Defendant told them it was, and the deputy asked for permission to search it. Although defendant did not give his permission, the deputies searched the car. Defendant did not see the deputies recover anything, but after the search, they handcuffed defendant, told him to get out of the car, and searched his pockets, recovering money, a cell phone, a key, cigarettes, and a lighter.

Defendant testified that the money in his pocket was from a settlement of a personal injury lawsuit. He said he received $1,200 in late November 2006,

---

[4] The bundle of money consisted of six $20 bills, two $10 bills, seven $5 bills, and 29 $1 bills, for a total of $204.

and used some of that money to buy the Accord and some clothing. He bought the car about two weeks before he was arrested, and testified that he knew the brake lights were working because he saw the prior owner drive the car the same night he bought it.

## PROCEDURAL BACKGROUND

Defendant was charged by information with two counts: count 1, possession for sale of cocaine base (Health & Saf. Code, § 11351.5) and count 2, transportation of a controlled substance (Health & Saf. Code, § 11352, subd. (a)). The information also alleged a prior conviction under the "Three Strikes" law (Pen. Code, §§ 1170.12, subds. (a)–(d), 667, subds. (b)–(i)), and four prior prison terms under Penal Code section 667.5, subdivision (b).

Before trial, the trial court granted defendant's *Pitchess* motion (limited to a period of five years), but after conducting an in camera hearing, determined there were no relevant complaints filed against the deputies during the period at issue. That same day the court also conducted a hearing on defendant's motion to suppress evidence found during the deputies' search of defendant and his car. Deputy Chahine and defendant testified at the hearing. The court denied the motion, finding defendant's testimony not credible, and concluding that the deputies had probable cause to conduct a lawful investigation, and that there was no unreasonable detention.

At the start of the second day of trial, after the jury had been selected but before opening statements, defense counsel asked for a continuance. She told the court that she had recently discovered there was a mistake in the police report—the date of the arrest was incorrectly written as "12-8-02" on the top portion of the first two pages of the report, although it correctly refers to 2006 in the handwritten portion of the report on the bottom of the first page—and her investigation had been impaired due to that mistake. She explained that she wanted to establish that the brake light on defendant's car was working at the time of the arrest, to raise questions about the deputies' credibility, and therefore she needed to contact the person who bought the car from the impound yard to question him or her about the condition of the brake light. Her investigator previously had been unable to locate the new owner because, based upon the incorrect date in the police report, the person at the impound yard claimed there were no records of the car. Upon discovering the mistake (the morning of the second day of trial), the investigator called the impound yard back and learned that they did have records for the car. Defense counsel asked for a continuance to give her time to locate the new owner. The trial

court denied the request because (1) the investigator should have noticed the different dates on the police report and should have checked both dates with the impound yard; (2) it was highly speculative that the new owner would have any recollection of the condition of the brake light when he or she bought the car; and (3) defense counsel did not show that the evidence sought would be material or that it could be found in a reasonable time.

The trial went forward, and the jury found defendant guilty of count 2 (transportation of a controlled substance) and the lesser included crime of possession of cocaine on count 1.[5] A month later, before sentencing, defendant moved for a new trial and asked for a continuance to allow counsel to contact and obtain an affidavit from the new owner of defendant's car. The trial court denied the request for a continuance, finding a lack of diligence on the part of defense counsel in locating the witness, and denied the motion for a new trial. The court sentenced defendant to the low term of three years on count 2, doubled under the Three Strikes law, plus one year for each of two prior prison terms, for a total of eight years.[6]

## DISCUSSION

A. *Ineffective Assistance of Counsel*[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

B. *CALCRIM No. 362*

The prosecutor asked that the jury be instructed with CALCRIM No. 362, "Consciousness of Guilt: False Statements," which states: "If the defendant made a false or misleading statement relating to the charged crime, knowing the statement was false or intending to mislead, that conduct may show he was aware of [his] guilt of the crime and you may consider it in determining [his] guilt. . . . If you conclude that the defendant made the statement, it is up to you to decide its meaning and importance. However, evidence that the defendant made such a statement cannot prove guilt by itself." In response to

---

[5] The jury indicated that it could not reach a verdict on the greater crime in count 1, but did reach a verdict on the lesser included crime. On agreement of counsel, the court accepted the verdict on the lesser crime despite the absence of a signed not guilty verdict on the greater crime.

[6] Defendant admitted the prior conviction under the Three Strikes law and two of the four prior prison terms alleged in the information.

[*]See footnote, *ante*, page 1241.

defendant's objection, the prosecutor argued that the instruction was justified under the Bench Notes by defendant's trial testimony, because if the jury believed he was lying, that testimony could be evidence of consciousness of guilt. The trial court agreed and gave the instruction to the jury.

On appeal, defendant argues the trial court erred in giving the instruction because (1) the instruction is to be given only if the allegedly false statements were made before trial, because giving the instruction based upon trial testimony improperly singles out the defendant's testimony as subject to heightened scrutiny and therefore has a chilling effect upon a defendant's choice to exercise his constitutional right to testify in his own behalf; and (2) to the extent the instruction is deemed to apply to defendant's testimony in the hearing on his suppression motion, it violated his right not to have statements made in a suppression motion introduced against him during the People's case-in-chief. We doubt that CALCRIM No. 362 was intended to be used when the basis for an inference of consciousness of guilt is disbelief of a defendant's trial testimony, but we conclude that defendant was not prejudiced by use of the instruction.

██ As defendant correctly notes, CALJIC No. 2.03, the standard consciousness of guilt instruction in use before CALCRIM No. 362, limits the consideration of false or misleading statements to those made before trial.[7] It is also true that many of the cases that discuss the inference of consciousness of guilt arising from deliberately false statements involve statements made to officers at the time of the defendant's arrest. (See, e.g., 1 Witkin, Cal. Evidence (4th ed. 2000) Hearsay, § 110, pp. 813–814, and cases cited therein.) Indeed, the Bench Notes accompanying CALCRIM No. 362 cite to these decisions. And although CALCRIM No. 362 omits the limiting language found in CALJIC No. 2.03, CALCRIM No. 362 expressly refers to a false or misleading *statement* made by defendant, not to false or misleading *testimony*. Further, the parties have not cited, nor have we found, any case in which a consciousness of guilt instruction was given based solely on a defendant's trial testimony.

Thus, we doubt that the CALCRIM committee intended CALCRIM No. 362 to be used as it was here: to permit an inference of consciousness of

---

[7] CALJIC No. 2.03 provides: "If you find that before this trial [a] [the] defendant made a willfully false or deliberately misleading statement concerning the crime[s] for which [he] [she] is now being tried, you may consider that statement as a circumstance tending to prove a consciousness of guilt. However, that conduct is not sufficient by itself to prove guilt, and its weight and significance, if any, are for you to decide."

guilt based on knowingly false or intentionally misleading statements in a defendant's trial testimony. Nevertheless, we conclude that defendant suffered no prejudice, because California law makes clear that a defendant's false trial testimony may, in proper circumstances, be considered as evidence of consciousness of guilt.

For example, in *People v. Showers* (1968) 68 Cal.2d 639 [68 Cal.Rptr. 459, 440 P.2d 939], the defendant was seen searching for something in an ivy patch in which a balloon of heroin was found. He testified at a bench trial that he was looking for money that another person told him was lost in the ivy. The California Supreme Court held there was substantial evidence of defendant's consciousness of guilt based in part on that testimony: "There is substantial evidence which meets the two requirements of guilty knowledge. Defendant was searching for something in the ivy. He testified that he was looking for the $50 which Larry Oliver told him he had lost. . . . No money was found, nor did the trial judge believe that any money was ever lost. In the circumstances defendant's explanation for his three visits to the ivy patch could be found by the trier of fact to be a fabrication. False statements regarding incriminating circumstances constitute evidence which may support an inference of consciousness of guilt." (*Id.* at p. 643.)

Similarly, in *People v. Amador* (1970) 8 Cal.App.3d 788 [87 Cal.Rptr. 662], the Court of Appeal held that false trial testimony can be considered as evidence of consciousness of guilt if the jury could conclude the testimony was intentionally false. The court explained: "Analytically there may be a difference between false statements to the police during the investigatory stage of a prosecution and false testimony from the stand. It has, however, been recognized authoritatively that under proper circumstances each type of falsehood may be considered as part of the prosecution's total case. Thus, for example, in *People v. Foster* [(1953)] 115 Cal.App.2d 866 [253 P.2d 50], it is clear that had the defendant Foster not attempted to manufacture a clumsy defense from the stand, his conviction would have been reversed for insufficiency of evidence. . . . ' "[W]here a material fact is established by evidence and it is shown that a defendant's testimony as to that fact was willfully untrue, this circumstance not only furnishes a ground for disbelieving other testimony of this defendant [citations], but also tends to show consciousness of guilt or liability on his part and has probative force in connection with other evidence on the issue of such guilt or liability . . . ." [¶] It should be emphasized that no inference of consciousness of guilt can be drawn from the mere fact that the jury, in order to convict, must have disbelieved defendant's [testimony]; only where the false statement or testimony is intentional rather than merely mistaken and where such statement or

testimony suggests that the defendant has no true exculpatory explanation can it be considered as an admission of guilt. [Citations.] Here defendant did not simply deny his guilt; he ventured upon an explanation so unusual that the triers of fact could conclude that it was an intentional fabrication indicating consciousness of guilt and the absence of any true exculpatory explanation.' " (*People v. Amador, supra,* 8 Cal.App.3d at pp. 791–792.)

 As applied to this case, CALCRIM No. 362 did nothing more than state this principle, i.e., that if the jury concluded that defendant intentionally gave false or misleading testimony, it *may* infer that defendant is aware of his guilt and *may* consider that inference—along with other evidence—in determining defendant's guilt. And although it might be said that the instruction singles out a defendant's testimony as subject to heightened scrutiny compared to other witnesses, that is true only because the principle involved is uniquely applicable to the defendant.[8] That is not, however, a legitimate ground for concluding that the instruction unconstitutionally burdened defendant's choice to testify or resulted in any improper inference of guilt based on the jury's evaluation of his testimony. Thus, defendant's first argument challenging the instruction in this case fails.

Defendant's second argument for challenging the instruction—i.e., that use of the instruction violated his right not to have his testimony from a hearing on a suppression motion used against him—fails because the suppression motion testimony was used only to impeach defendant at trial. While cross-examining defendant at trial, the prosecutor referred to defendant's testimony at the suppression hearing three times. The first reference related to the time defendant said he arrived at Atlantic Plaza. At trial, defendant testified that he arrived shortly after 7:00 a.m. The prosecutor challenged that testimony by presenting his suppression motion testimony in which defendant testified he arrived between 6:45 a.m. and 7:15 a.m. The second reference related to defendant's knowledge of the condition of the brake light. He testified at trial that he knew the brake lights were working when he bought

---

[8] We note that defendant's argument is based in part upon our decision in *People v. Rubio* (1977) 71 Cal.App.3d 757 [139 Cal.Rptr. 750], in which we stated that when a defendant testifies in a manner consistent with his pretrial statements to the police but inconsistent with the prosecution's case at trial, CALJIC No. 2.03 should not be given because in that event it necessarily "casts specific doubt on a defendant's credibility as a witness and singles out defendant's testimony as subject to more particular scrutiny than that attached to prosecution witnesses." (*Rubio,* at p. 769, italics omitted.) As discussed in *People v. Edwards* (1992) 8 Cal.App.4th 1092 [10 Cal.Rptr.2d 821], however, that no longer is a correct statement of law in light of subsequent Supreme Court decisions. (*Id.* at p. 1103, citing *People v. Kimble* (1988) 44 Cal.3d 480 [244 Cal.Rptr. 148, 749 P.2d 803]; *People v. Bacigalupo* (1991) 1 Cal.4th 103 [2 Cal.Rptr.2d 335, 820 P.2d 559]; and *People v. Kelly* (1992) 1 Cal.4th 495 [3 Cal.Rptr.2d 677, 822 P.2d 385].)

his car because he saw the previous owner drive it the same night he bought it. The prosecutor then presented his testimony at the suppression hearing that he did not know whether the brake lights were working at the time of the arrest. The final reference was used to again challenge defendant's trial testimony regarding the timing of his activities the morning of his arrest. At trial, he testified that he put the items he bought at the Food Warehouse in the trunk of his car around 9:00 a.m., but he testified at the suppression hearing that he put the items in his car "after 8:00."

■ The prosecutor's use of defendant's testimony at the suppression hearing was proper. Although a defendant's testimony at a suppression hearing may not be used against him as part of the People's case-in-chief, " 'if a defendant's testimony at a pretrial suppression hearing is inconsistent with his testimony at trial, the People may use such pretrial testimony for impeachment. [Citation.]' [Citation.] This rule does not force a defendant to choose between a valid Fourth Amendment claim and the Fifth Amendment right against self-incrimination. 'He may testify *truthfully* at his suppression motion should he elect to do so. In the event that he chooses to testify *truthfully* at trial, he runs no risk of being impeached. He has, however, no right to commit perjury and is not entitled to a "false aura of veracity." [Citation.] If his trial testimony is inconsistent with that previously given at the suppression hearing, he may be impeached therewith. [Citation.]' [Citation.]" (*People v. Humiston* (1993) 20 Cal.App.4th 460, 474–475 [24 Cal.Rptr.2d 515].) Because the prosecutor's use of defendant's suppression hearing testimony was proper, the use of the consciousness of guilt instruction, to the extent it was understood to apply to that testimony, did not violate the prohibition against use of such testimony in the People's case-in-chief.[9]

Finally, although we have rejected defendant's challenges in this case, we do not endorse the use of CALCRIM No. 362 when the basis for an inference of guilt is false or misleading statements in a defendant's trial testimony, rather than false or misleading statements made prior to trial. We further invite the CALCRIM committee to clarify its intended use of the instruction.

## C. Pitchess *Motion**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

[9] We note that defendant asserts the prosecutor's use of the suppression hearing testimony to challenge his trial testimony regarding the time of his arrival at Atlantic Plaza was improper because the testimonies were not inconsistent (7:00 a.m. versus "between 6:45 and 7:15 a.m."). Even if defendant is correct, any error was harmless.

*See footnote, *ante*, page 1241.

## DISPOSITION

The judgment is affirmed.

Epstein, P. J., and Suzukawa, J., concurred.

Appellant's petition for review by the Supreme Court was denied April 29, 2009, S171063.