Filed 1/17/14  P. v. Lancaster CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | C069032 |
| v. | (Super. Ct. No. 72005780) |
| JONATHAN NELCE LANCASTER, | |
| Defendant and Appellant. | |

Following his convictions for stalking (Pen. Code, § 646.9, subd. (b)),[1] perjury by declaration (§ 118), and seven counts of disobeying a court order (§ 166, subd. (a)(4)), defendant Jonathan Nelce Lancaster was granted probation under various terms and conditions, including one that prohibited him from making contact with the victims and another that required him to obey all laws.  Finding defendant violated this latter condition by knowingly possessing police reports and California Law Enforcement Telecommunications System (CLETS) printouts pertaining to one of the victims with knowledge he was not authorized by law to receive this information (§§ 11143, 13304),

---

[1]     Undesignated statutory references are to the Penal Code.

the trial court ordered defendant to serve 45 days in jail, with credit for 20 days, and reinstated probation.

On appeal, defendant asserts there is no substantial evidence to support the trial court's finding he possessed these documents with knowledge he was not authorized to receive them. As defendant points out, the trial court relied on the statement, "DMV RECORD FOR LAW ENFORCEMENT USE ONLY," (use notice) printed on two pages of the CLETS printouts to find defendant knew he was not authorized to receive the documents. Defendant argues: (1) the statement is ambiguous because "[t]here is no context to the statement to put the reader on notice that the statement refers to the . . . entire document"; and (2) "notice that 'use' is limited to law enforcement only, does not provide notice that an unauthorized person cannot 'possess' the document." In response, the Attorney General argues that, in addition to this warning regarding use, defendant's knowledge that he was not authorized to receive the documents could be inferred from the fact he lied about where he received them. We agree with the Attorney General and affirm the judgment.

BACKGROUND

### *Underlying Crimes[2]*

We dispense with a detailed recitation of the facts surrounding defendant's underlying crimes. For our purposes, it will suffice to say defendant lived next door to Linda and Mark Vierra in Olympic Valley, near Lake Tahoe. The Vierras operated a snow removal business. An argument between Mark Vierra and defendant over politics in 2006 led to a dispute over whether the Vierras were illegally operating their business, which ultimately led defendant to willfully and maliciously harass and threaten the

---

[2] The facts surrounding defendant's underlying offenses are taken in part from our unpublished opinion in *People v. Lancaster* (Feb. 16, 2011, C063410) [nonpub. opn.], of which we take judicial notice. (Evid. Code, §§ 451, 452, subds. (a) & (d), 459.)

Vierras between January 2008 and March 2009 in violation of section 646.9, subdivision (b). Incidents of harassment occurring in April and May 2008 were in violation of a temporary restraining order obtained by the Vierras, amounting to seven violations of section 166, subdivision (a)(4). Defendant also submitted a willfully false declaration in violation of section 118.

Tried by jury and found guilty of the foregoing crimes, defendant was granted probation under various terms and conditions, including one that prohibited him from making contact with the Vierras and another that required him to obey all laws.

### *Violation of Probation*

In April 2011, the District Attorney filed a petition to revoke defendant's grant of probation. The petition alleged defendant violated section 166, subdivision (a)(4), by contacting Linda Vierra. This petition was subsequently amended to allege three probation violations: (1) defendant contacted, harassed, or annoyed Linda Vierra; (2) defendant violated sections 13304 and 11143 by knowingly possessing police reports and CLETS printouts pertaining to Mark Vierra; and (3) defendant failed to pay court-ordered restitution and fees. Because the trial court found only the second of these allegations to be true, we will not further address the other two.

With respect to the second alleged violation, defendant stipulated he was in possession of police reports and CLETS printouts pertaining to Mark Vierra. These documents were seized from his home in Ben Lomond, near Santa Cruz, during a probation search. They were in an envelope addressed to Lynsey Paulo, an investigative reporter for television station KCRA, Channel 3, in Sacramento. Also in the envelope was a letter to Paulo, dated August 15, 2009, written from the Placer County Jail while defendant was awaiting trial on the underlying charges. The letter thanked Paulo for doing a story on "illegal snow removal companies in Placer County," recounted defendant's version of the events leading to his arrest for what he characterized as "trumped up" and "bogus" charges, and implored the reporter to investigate "corruption

3

in the justice system in Placer County." The letter claimed the "corrupt Tahoe D.A." refused to "hand over police reports, 911 logs and other discovery" defendant and his attorney Julia Young had "repeated[ly] requested to prove (a) Mark Vierra's history of drug [and] alcohol problems, (b) Mark Vierra's history of domestic violence against his wife and children and (c) [defendant's] innocence." The letter stated Young had "received some of the information [they had] been trying to get" and then recounted defendant's interpretation of several incidents in which, according to defendant, "the corrupt Tahoe D.A. declined to prosecute Mark Vierra." The letter continued: "The selective enforcement and prosecution against me is a huge violation of my civil and constitutional rights. [¶] As I have told you before, I filed complaints with the Placer County Grand Jury, the California State Attorney General. All of my complaints directly named Tahoe District Attorney Chris Cattran and Tahoe Commissioner Trilla Bahrke. They are corrupt and use and abuse their office and power to do favors for their friends. They don't prosecute them when they commit crimes and the[y] use the law to harass and intimidate people like me." Finally, attached to the letter were the police reports and CLETS printouts forming the basis for defendant's violation of probation.

During the hearing on the probation violation, defendant testified Young gave him the police reports and CLETS printouts while he was in jail, he "had no idea" he was not authorized to have them, and he believed "these documents were obtained through the discovery process prior to [his] trial." According to defendant, Young gave him two copies of the documents. Defendant gave one copy, along with a copy of the letter, to another inmate who was supposed to mail the package to Paulo after his release from jail. The package was apparently hand delivered to Paulo.

Young testified in rebuttal. After reviewing the documents, Young testified she had never seen one of the police reports (pertaining to an incident of child abuse allegedly committed by Mark Vierra against his 13-year-old son, L.V.), she was not sure whether she had seen a second police report (pertaining to an incident in which Mark

4

Vierra allegedly violated a restraining order obtained by another man, Arnold Allen), and she had seen the third police report (pertaining to an incident of domestic violence allegedly committed by Mark Vierra against his wife). Young testified she had not received any CLETS printouts regarding Mark Vierra and did not release these documents to defendant. She also pointed out the printouts had not been Bates stamped, which was the general practice of the Placer County District Attorney's office, and the only discovery she had received relating to defendant's case came from that office. Young further testified she did provide defendant with redacted copies of his police reports prior to trial. After defendant was released from jail, Young's secretary gave him a complete copy of the discovery in a sealed envelope. Young did not review these documents before they were given to defendant.

Defendant again took the stand following Young's testimony. He testified that he remembered receiving documents at the conclusion of the case and these documents did not include the police reports attached to the letter to Paulo. Defendant maintained he received the documents at issue in this case from Young while he was in jail.

### *Trial Court Ruling*

After entertaining argument on the probation violation, the trial court found defendant violated sections 13304 and 11143. The trial court first explained both sections make it a misdemeanor offense for any person, except those specifically referred to in Evidence Code section 1070 (i.e., newspersons), to knowingly possess a record if the person also knows he or she is not authorized by law to receive the record. Finding defendant knew he was not authorized by law to receive the police reports and CLETS printouts, the trial court explained: "In this case, [defendant] testified that he received this information from his lawyer, Julia Young, before the criminal trial. Now, the only other way that I could determine that he could have received it, that is legally, is based on some testimony that the secretary gave discovery to [defendant] at the conclusion of the case in a sealed envelope. [¶] [Defendant] testified he was 100 percent sure that he got

5

all of the documents that were seized before the trial in jail. That does away with the secretary inadvertently providing the information at the end of the trial." The trial court then recounted Young's testimony that she had not received any CLETS information about the victims in defendant's case, she had not seen the police report pertaining to the alleged incident of child abuse, the documents seized from defendant's home had not been Bates stamped, and she had not provided these documents to defendant. The trial court also pointed out that two of the CLETS pages included the line: "DMV RECORD FOR LAW ENFORCEMENT USE ONLY." Based on the foregoing, the trial court concluded defendant knowingly possessed the police reports and CLETS printouts while knowing he was not authorized by law to receive these documents, commenting: "I think that the information written clearly right on the face of that document that it's for law enforcement purposes only, 'DMV record. For law enforcement use only,' indicates that having that in his possession and looking at that would certainly notify him of that. Again, I don't know where he got it, but I know he didn't get it from [Young]."

DISCUSSION

I

*General Legal Principles*

At the time of the probation revocation hearing, former section 1203.2, subdivision (a), provided, in relevant part, that "the court may revoke and terminate . . . probation if the interests of justice so require and the court, in its judgment, has reason to believe from the report of the probation officer or otherwise that the person has violated any of the conditions of his or her probation . . . or has subsequently committed other offenses, regardless whether he or she has been prosecuted for such offenses." (Stats. 1989, ch. 1319, § 1, p. 5305; see *People v. Rodriguez* (1990) 51 Cal.3d 437, 447.)

"Revocation of probation is not part of a criminal prosecution, and therefore the full panoply of rights due in a criminal trial does not apply to probation revocations. [Citation.] 'In placing a criminal on probation, an act of clemency and grace [citation],

6

the state takes a risk that the probationer may commit additional antisocial acts,' and 'the state has a great interest in being able to imprison the probationer [for probation violations] without the burden of a new adversary criminal trial. [Citation.]' [Citation.] The standard of proof in probation revocation proceedings is proof by a preponderance of the evidence. [Citation.]" (*People v. Stanphill* (2009) 170 Cal.App.4th 61, 72.)

"We review a probation revocation decision pursuant to the substantial evidence standard of review [citation], and great deference is accorded the trial court's decision, bearing in mind that '[p]robation is not a matter of right but an act of clemency, the granting and revocation of which are entirely within the sound discretion of the trial court. [Citation.]' [Citation.] [¶] 'The discretion of the court to revoke probation is analogous to its power to grant the probation, and the court's discretion will not be disturbed in the absence of a showing of abusive or arbitrary action. [Citations.]' [Citation.] 'Many times circumstances not warranting a conviction may fully justify a court in revoking probation granted on a prior offense. [Citation.]' [Citation.] ' "[O]nly in a very extreme case should an appellate court interfere with the discretion of the trial court in the matter of denying or revoking probation . . . ." ' [Citation.] And the burden of demonstrating an abuse of the trial court's discretion rests squarely on the defendant. [Citation.]" (*People v. Urke* (2011) 197 Cal.App.4th 766, 773.)

## II

### *Sufficiency of the Evidence*

Sections 11143 and 13304 both provide: "Any person, except those specifically referred to in Section 1070 of the Evidence Code, who, knowing he [or she] is not authorized by law to receive a record or information obtained from a record, knowingly buys, receives, or possesses the record or information is guilty of a misdemeanor." Section 11143 applies to "state summary criminal history information" (§ 11140, subd. (a)), i.e., "the master record of information compiled by the Attorney General pertaining to the identification and criminal history of any person, such as name, date of birth,

7

physical description, fingerprints, photographs, dates of arrests, arresting agencies and booking numbers, charges, dispositions, and similar data about the person." (§ 11105, subd. (a)(2)(A).) Section 13304 applies to "local summary criminal history information" (§ 13301, subd. (a)), i.e., "the master record of information compiled by any local criminal justice agency . . . pertaining to the identification and criminal history of any person, such as name, date of birth, physical description, dates of arrests, arresting agencies and booking numbers, charges, dispositions, and similar data about the person." (§ 13300, subd. (a)(1).) Under both provisions, a person is not " 'authorized by law to receive a record' " unless "authorized by a court, statute, or decisional law." (§§ 11140, subd. (b), 13301, subd. (b).)

Defendant stipulated to the fact he knowingly possessed the documents at issue in this case and does not dispute he was not authorized by law to receive them. Instead, he challenges the sufficiency of the evidence to prove he *knew* he was not authorized to receive the documents. Specifically, defendant argues the use notice contained on two pages of the CLETS printouts, (1) is ambiguous because "[t]here is no context to the statement to put the reader on notice that the statement refers to the . . . entire document," and (2) "notice that 'use' is limited to law enforcement only, does not provide notice that an unauthorized person cannot 'possess' the document." The first argument is rejected. Having reviewed the documents containing the use notice, we have no problem concluding a reasonable reader of that notice would understand it to refer to the entire document.

The second argument fails because defendant relies only on the language of the use notice and does not address the additional evidence of knowledge. As defendant points out, the words "use" and "possess" do not mean the same thing. "Use" means, among other things, "to put into action or service:  avail oneself of: EMPLOY," and "to carry out a purpose or action by means of:  UTILIZE." (Merriam-Webster's Collegiate Dict. (11th ed. 2006) p. 1378, col. 2.)  "Possess" means, among other things, "to have

8

possession of, take possession of." (*Id*. at p. 968, col. 2.) In this regard, "possession" means "the act of having or taking into control" and "control or occupancy of property without regard to ownership." (*Ibid*.)

In light of the definitional difference between "use" and "possess," defendant argues that "the statement 'DMV Record For Law Enforcement Use Only' provides no notice to an unauthorized person as regarding possession." This argument would have more force if sections 11143 and 13304 prohibited the *use* of records by unauthorized persons and defendant was found to have used such a record based on mere *possession* of the record. But that is not the situation here. Our question is whether, in the context of a probation violation, notice that the *use* of a document is limited to law enforcement provides some evidence the unauthorized possessor is aware that *possession* of the document is also prohibited. We conclude the use notice in this case should have raised a red flag in defendant's mind regarding his possession of the documents.

We need not decide whether the use notice, by itself, would be enough to support the trial court's finding defendant knew he was not authorized to receive the documents because there is additional evidence. As mentioned, Young testified she did not give the documents to defendant, which directly contradicted defendant's testimony concerning where he received them. The trial court believed Young and disbelieved defendant. We are bound by this credibility determination. (*People v. Tully* (2012) 54 Cal.4th 952, 994.) Providing false testimony evidences consciousness of guilt. (*People v. Beyah* (2009) 170 Cal.App.4th 1241, 1249; *People v. Showers* (1968) 68 Cal.2d 639, 643.) Under these circumstances, we conclude the trial court could properly have determined defendant's false testimony about where he received the documents evidenced his consciousness of the fact he was not authorized to receive them. This evidence, in addition to the use notice printed on two of the CLETS pages, provided substantial evidence supporting the trial court's finding—by a preponderance of evidence—that defendant knew he was not authorized to receive the documents.

DISPOSITION

The judgment is affirmed.


                                        HOCH        , J.



We concur:



    RAYE      , P. J.



    MURRAY    , J.

10