Filed 1/12/15  in re Dontae R. CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re DONTAE R., a Person Coming Under the Juvenile Court Law. _____ | B253356 |
| THE PEOPLE, | (Los Angeles County Super. Ct. No. MJ22185) |
| Plaintiff and Respondent, | |
| v. | |
| DONTAE R., | |
| Defendant and Appellant. | |

APPEAL from a judgment (order of wardship) of the Superior Court of Los Angeles County,
Nancy S. Pogue, Judge.  Affirmed.

Lynette Gladd Moore, Esq., for Defendant and Appellant.

Kamala D. Harris, Attorney General, Lance E. Winters, Assistant Attorney General, Steven D. Matthews, Analee J. Brodie and Garett Gorlitsky, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Dontae R., a minor, appeals from an order of wardship entered following a determination he committed a lewd act upon a child (Welf. & Inst. Code, § 602; Pen. Code, § 288, subd. (a)). The court ordered appellant suitably placed. We affirm the judgment (order of wardship).

## *FACTUAL SUMMARY*

Viewed in accordance with the usual rules on appeal (*In re Dennis B*. (1976) 18 Cal.3d 687, 697), the evidence presented at the adjudication established as follows.[1] On February 23, 2013, six-year-old Joshua D. (Joshua) lived with his mother R.D. (R.) in her Lancaster home. Appellant, who was 13 years old and R.'s nephew, also lived there.

R. testified as follows. Prior to about 3:45 p.m. on February 23, 2013, Joshua, R., and appellant were in R.'s bedroom watching television. About 3:45 p.m., R. fell asleep on her bed in her bedroom after putting her niece to sleep.

About 4:00 p.m., R. awoke. Joshua and appellant were at the foot of the bed and Joshua was "like on his knees" over appellant. Joshua was orally copulating appellant.[2] R. testified when she first awoke and saw appellant's face, "He looked like he was scared because he just got caught." When R. awoke, she asked, "what are you guys doing?" and appellant replied, "Nothing."

R. saw Joshua's head rising over appellant's lap, and she jumped up. R. testified when she jumped up, "[appellant] was pulling his shirt over – my son just had a scared little face." Appellant was wearing a T-shirt and cargo shorts.

Appellant's shirt was pulled down enough to cover his lap, and there was a bulge in the shirt. The bulge was caused by appellant's erect penis. When appellant was

---

[1]    At the beginning of the adjudication, before the presentation of evidence, appellant admitted he was born on January 21, 2000. The facts set forth in this Factual Summary are based on the evidence presented during the People's case-in-chief alone. In light of the issue presented in this appeal, there is no need to recite the defense or rebuttal evidence.

[2]    Appellant concedes the "prosecution proved the commission of the offense through the testimony of Joshua and [R.]." We accept the concession.

pulling his shirt down, his hands were holding his shirt and his covered erect penis was between his hands. The prosecutor asked if R. remembered what, besides the bulge, she saw underneath the shirt. R. replied no and added, "He never would show anything . . . ." When R. saw what was happening, she became upset, wanted to know what was going on, and spoke loudly. Joshua's eyes were big after R. arose, said something, and approached him.

R. told appellant to sit there and she was going to get his mother, Lillian S. (Lillian). Lillian lived in the home and was in the living room. As R. went to get Lillian, appellant jumped up, then appellant and Joshua "jumped up all the way up." Appellant was fixing his pants, buttoning them.

Immediately before Lillian entered the bedroom, R. asked appellant what happened. Appellant replied, "Nothing." R. did not believe appellant. The following colloquy later occurred between the prosecutor and R.: "Q. Did [appellant] change his story with you? [¶] A. Meaning? [¶] Q. Meaning did he – when you asked him initially and he said nothing happened, did you later find out that that in fact was not true? [¶] A. Yeah. [¶] Q. How was that? [¶] A. My son." After R. located Lillian, Lillian became angry, entered R.'s bedroom, grabbed appellant, and took him into the bathroom. Lillian's husband and her children also lived in the house.

Joshua testified as follows. Joshua had seen appellant's penis three times. Appellant had shown it to Joshua months prior to the adjudication. Appellant three times told Joshua to orally copulate appellant. On February 23, 2013, Joshua was in R.'s bedroom while she was sleeping. Appellant told Joshua to suck appellant's penis and Joshua complied once. Appellant's penis was kind of hard. Joshua felt bad when appellant asked Joshua to orally copulate appellant, and Joshua did not want to do it.

The next day, appellant told Joshua to drink Joshua's urine. Appellant told Joshua that Joshua could drink it twice. Joshua did and regurgitated. R. was not home at the time. Appellant told Joshua to urinate in a cup and appellant made Joshua do so. The prosecutor asked Joshua what appellant did to make Joshua do so, and Joshua testified,

"then [appellant] got the hot water and put it on my it [*sic*]." (During his testimony, Joshua repeatedly referred to a penis as an "it.")

Los Angeles County Sheriff's Deputy Michael Gelardo testified he investigated the February 23, 2013 incident. Joshua told Gelardo that appellant "made" Joshua "suck [appellant's] dick."

## ISSUE

Appellant claims there was insufficient evidence at the close of the People's case-in-chief appellant knew the wrongfulness of his act.

## DISCUSSION

*There Was Sufficient Evidence Based on the People's Case-in-Chief Appellant Knew the Wrongfulness of His Act.*

1. *Pertinent Facts.*

Count 1 of appellant's petition alleged the present offense. After the People presented their case-in-chief, appellant, pursuant to Welfare and Institutions Code section 701.1, moved to dismiss the petition, in part on the ground the People had not proven, as required by Penal Code section 26, paragraph One, that appellant knew the wrongfulness of his act at the time of the offense. The court denied the motion. Following the presentation of the defense and rebuttal evidence, appellant renewed his argument the People had not proven the requisite knowledge of wrongfulness. The court found true beyond a reasonable doubt appellant committed the alleged offense and the court sustained the petition.

2. *Analysis.*

Appellant claims there was insufficient evidence at the close of the People's case-in-chief appellant knew the wrongfulness of his act. We reject the claim.

Penal Code section 26, paragraph One, states, "All persons are capable of committing crimes except those belonging to the following classes: [¶] One--Children under the age of 14, in the absence of clear proof that at the time of committing the act charged against them, they knew its wrongfulness." "Clear proof" is proof by clear and convincing evidence. (*In re Manuel L.* (1994) 7 Cal.4th 229, 232 (*Manuel L.*).)

4

Penal Code section 26, paragraph One establishes a " 'presumption of a minor's incapacity.' " (*People v. Lewis* (2001) 26 Cal.4th 334, 378 (*Lewis*).) "However, 'the presumption of a minor's incapacity [may] be rebutted by clear and convincing evidence' that the minor defendant knew the act's wrongfulness." (*Ibid.*)  The People bear the burden of proof to satisfy the clear and convincing evidence standard of proof.  (*Manuel L., supra,* 7 Cal.4th at pp. 232, 234, 239.)  This standard is not the standard of proof beyond a reasonable doubt.  (*Id*. at pp. 231, 233-234, 238.)  Penal Code section 26, paragraph One applies to proceedings under Welfare and Institutions Code section 602. (*In re Gladys R.* (1970) 1 Cal.3d 855, 867.)

a.  *We Assume a Welfare and Institutions Code Section 701.1 Motion Lies to Challenge Whether the People Have Proven a Minor Knew the Wrongfulness of the Minor's Acts for Purposes of Penal Code Section 26, Paragraph One.*

Welfare and Institutions Code section 701.1 states, in relevant part, "At the hearing, the court, on motion of the minor . . . , shall order that the petition be dismissed . . . , *after the presentation of evidence on behalf of the petitioner has been closed*, if the court, upon weighing the evidence *then before it*, finds that the minor is not a person described by Section . . . 602." (Italics added.)  Courts have "held that [Welfare and Institutions Code] section 701.1 is substantially similar to Penal Code section 1118 governing motions to acquit in criminal trials." (*In re Anthony J.* (2004) 117 Cal.App.4th 718, 727, fn. omitted.)

Thus, when Welfare and Institutions Code section 701.1 applies, the juvenile court must determine whether the burden and standard of proof have been satisfied based on the People's case-in-chief alone.  The motion lies, for example, to permit a trial court to determine whether the People have proven the elements of an offense beyond a reasonable doubt.  However, the fact Penal Code section 26, paragraph One applies to Welfare and Institutions Code section 602 proceedings does not necessarily mean a Welfare and Institutions Code section 701.1 motion lies to challenge, at the close of the People's case-in-chief, whether Penal Code section 26, paragraph One has been satisfied.

Appellant argues a motion pursuant to Welfare and Institutions Code section 701.1 lies in the juvenile court to challenge whether, based on the People's case-in-chief alone, the People have proven by clear and convincing evidence appellant had the knowledge of wrongfulness required by Penal Code section 26, paragraph One. Respondent suggests the contrary.[3] Neither party cites controlling authority on this issue.

We assume without deciding a Welfare and Institutions Code section 701.1 motion lies to permit a juvenile court to determine whether the People's case-in-chief alone has proven by clear and convincing evidence a minor had the knowledge required by Penal Code section 26, paragraph One.

b. *We Accept Appellant's Concession That We Review Whether There Was Sufficient Evidence of Clear Proof Appellant Knew the Wrongfulness of His Acts.*

The "standard for review of the juvenile court's denial of a motion to dismiss [pursuant to Welfare and Institutions Code section 701.1] is whether there is substantial evidence to support the offense charged in the petition." (*In re Man J.* (1983) 149 Cal.App.3d 475, 482; *In re Andre G.* (1989) 210 Cal.App.3d 62, 66, fn. 5 [accord].) The parties agree appellate review of the sufficiency of the evidence appellant had the knowledge required by Penal Code section 26, paragraph One is governed by the substantial evidence standard.

---

[3]     Respondent argues a Welfare and Institutions Code section 701.1 motion is like a Penal Code section 1118 motion in that they both lie to challenge in the trial court whether the People's case-in-chief alone has proven the elements of an offense beyond a reasonable doubt. Respondent therefore argues that because a minor's knowledge of the wrongfulness of the minor's acts (required by Penal Code section 26, paragraph One) is not an element of an offense, and because the above knowledge must be established only by clear proof (not by proof beyond a reasonable doubt), a Welfare and Institutions Code section 701.1 motion does not lie to challenge whether the People have proven that knowledge. In support of respondent's argument, respondent relies on, inter alia, *People v. Cottone* (2013) 57 Cal.4th 269, but that case concluded that when determining the admissibility of evidence of a minor's unadjudicated sexual offense, the trial court determines the preliminary question of whether, at the time the minor committed said offense, the minor had the knowledge required by Penal Code section 26, paragraph One. However, the present case does not involve an admissibility issue.

It is not clear the parties agree concerning the trial court standard of proof to which the substantial evidence standard of appellate review relates. Appellant concedes an appellate court must determine whether the People presented "substantial evidence from which a juvenile court could conclude that there was clear proof that appellant appreciated the wrongfulness of his conduct."

However, appellant also cites authority for the proposition an appellate court determines whether there is " 'substantial evidence . . . such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' " The latter is a more demanding standard. Respondent too cites this more demanding standard. The parties do not clearly explain how, if at all, this more demanding standard applies to appellate review of the sufficiency of the evidence of the knowledge required by Penal Code section 26, paragraph One. Neither party cites controlling authority governing a case such as this, involving appellate review of a denial of a Welfare and Institutions Code section 701.1 motion challenging whether the People proved by clear and convincing evidence a minor had the knowledge required by Penal Code section 26, paragraph One.

We accept appellant's concession an appellate court must determine whether the People presented "substantial evidence from which a juvenile court could conclude that there was clear proof [i.e., clear and convincing evidence] that appellant appreciated the wrongfulness of his conduct." Indeed, we conclude, for reasons discussed *post*, there was substantial evidence of proof beyond a reasonable doubt appellant had the requisite knowledge.

c. *We Assume the Scope of the Evidence Subject to Our Appellate Review is Limited to the Evidence Presented During the People's Case-in-Chief.*

The parties disagree concerning the scope of the evidence to be considered upon appellate review of the sufficiency of the evidence of the knowledge required by Penal Code section 26, paragraph One. Appellant argues an "appellate court must review the evidence as it stood at the close of the prosecution's case." Respondent argues, "[w]hen reviewing whether the evidence shows appellant understood the wrongfulness of his conduct, this Court should be able to consider all of the evidence presented by the

7

prosecution." Similarly, respondent argues, "The policies governing motions to dismiss do not compel this Court to limit its review to the state of the evidence at the close of the People's case in chief."

We assume without deciding the scope of the evidence properly considered upon appellate review of the sufficiency of the evidence of the knowledge required by Penal Code section 26, paragraph One is limited to the evidence presented during the People's case-in-chief and does not include defense or rebuttal evidence.

d. *Application of the Law to This Case.*

Having addressed the above threshold issues, we note the following. A minor's knowledge of the wrongfulness of the minor's act for purposes of Penal Code section 26, paragraph One may not be inferred from the commission of the act itself. (*Lewis, supra,* 26 Cal.4th at p. 378.) Moreover, a minor's knowledge of the wrongfulness must often be shown by circumstantial evidence. (*In re Tony C.* (1978) 21 Cal.3d 888, 900 (*Tony C.*).) A "minor's 'age is a basic and important consideration [citation], and, as recognized by the common law, it is only reasonable to expect that generally the older a child gets and the closer [he] approaches the age of 14, the more likely it is that [he] appreciates the wrongfulness of [his] acts.' [Citation.]" (*Lewis*, at p. 378.) Other pertinent considerations include the minor's conduct, knowledge, and the attendant circumstances of the crime, such as its preparation, the particular method of its commission, and circumstances demonstrating a consciousness of guilt, such as concealment, or false statements regarding the offense. (*Cf. Id.* at pp. 378-379; *Tony C.*, at p. 900.)

Appellant argues the only evidence presented during the People's case-in-chief appellant knew the wrongfulness of his act for purposes of Penal Code section 26, paragraph One was "Joshua's mother's statement that appellant appeared fearful *when confronted,*" and this evidence did not address the issue of whether appellant knew the wrongfulness of his act previously *at the time of the offense*. However, in the present case, there was substantial evidence, based on the People's case-in-chief alone, as follows.

8

Appellant was nearly 14 years old. Joshua, R., and appellant were watching television in R.'s bedroom. In preparation for the crime, appellant waited until after R. put her niece to sleep, and R. herself fell asleep, before appellant had Joshua orally copulate him. Although multiple people lived in the house, no one except appellant and Joshua knew appellant was having Joshua orally copulate him before R. awoke. When R. awoke and saw appellant's face, he looked like "he was scared because he just got caught." R. had made no statement to appellant, and had not confronted him, before appellant looked that way. The way he looked was evidence of his consciousness of guilt.

R. asked what appellant and Joshua were doing, and appellant replied "Nothing." However, R. later learned from Joshua that this reply by appellant was false. Appellant's false statement was evidence of consciousness of guilt. When R. jumped up, appellant was "pulling his shirt over." Appellant's shirt was pulled down enough to cover his lap, and his covered erect penis was between his hands. R. testified appellant would never show anything. Appellant's particular method of committing the offense and efforts to conceal his erect penis during the offense evidenced consciousness of guilt.

When R. went to get Lillian, appellant jumped up and began fixing his pants, buttoning them. This was evidence of consciousness of guilt his erect penis had been exposed. Appellant again said nothing had happened, again making a false statement evidencing consciousness of guilt.

Joshua testified appellant had shown appellant's penis to Joshua multiple times, and appellant had asked Joshua to orally copulate him multiple times. Joshua felt bad when appellant asked Joshua to orally copulate appellant, and Joshua did not want to do it. In fact, Joshua orally copulated appellant once. The trial court reasonably could have concluded appellant knew from the previous multiple, unsuccessful efforts to have Joshua orally copulate him that appellant knew Joshua did not want to do it because it was wrong. The trial court also reasonably could have concluded appellant therefore knew it was wrong when Joshua orally copulated appellant once. According to Gelardo's testimony during the People's case-in-chief, appellant "made" Joshua orally copulate

9

appellant. The trial court reasonably could have concluded from the fact appellant compelled Joshua to orally copulate him that appellant knew the oral copulation was wrong.

The trial court reasonably also could have concluded appellant made Joshua do the repugnant act of drinking his own urine (when R. was not at home), appellant knew this was wrong, and this provided additional evidence appellant knew the repugnant act of a six-year-old child orally copulating appellant was wrong.

Finally, on the issue of whether Joshua orally copulated appellant, the trial court reasonably could have concluded the testimony of R., Joshua, and Gelardo presented on that issue during the People's case-in-chief, and the evidence of appellant's statements presented on that issue during the People's case-in-chief, were so dramatically different that either (1) said testimony of R., Joshua, and Gelardo, or (2) said statements of appellant, were fabricated. The court also reasonably could have concluded it was appellant who was fabricating and this was evidence of his consciousness of guilt. (See *People v. Beyah* (2009) 170 Cal.App.4th 1241, 1249-1250; *People v. Barber* (1959) 166 Cal.App.2d 735, 741).)

In light of the above and based on the People's case-in-chief alone, we conclude there was substantial evidence of proof beyond a reasonable doubt "that at the time of committing the act charged against [appellant], [he] knew its wrongfulness" within the meaning of Penal Code section 26, paragraph One.[4] A fortiori, we conclude the standard of review appellant concedes applies here, namely, whether the People presented "substantial evidence from which a juvenile court could conclude that there was clear proof [i.e., clear and convincing evidence] that appellant appreciated the wrongfulness of his conduct" was satisfied, and we so hold. The trial court did not err by denying appellant's Welfare and Institutions Code section 701.1 motion.

---

[4] Appellant does not dispute there was substantial evidence, based on the entirety of the evidence presented during the adjudication, appellant had the knowledge required by Penal Code section 26, paragraph One.

*DISPOSITION*

The judgment (order of wardship) is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


KITCHING, Acting P. J.

We concur:



ALDRICH, J.



KUSSMAN, J.[*]

---

[*]    Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

11