Filed 5/14/25  In re A.R. CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re A.R., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>            v.<br><br> A.R.,<br><br>        Defendant and Appellant. | G063802<br><br>(Super. Ct. No. 23DL1570)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Joe T. Perez, Judge. Affirmed.

Kristen Owen, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Steve Oetting and Daniel J. Hilton, Deputy Attorneys General, for Plaintiff and Respondent.

In this appeal, A.R. contends there is insufficient evidence to support the juvenile court's finding he constructively possessed an assault rifle that was found in a car in which he had been riding as a passenger. Although the issue is a close one, we conclude the court's finding passes muster under the deferential standard of review applicable to sufficiency-of-the-evidence claims. We therefore affirm the judgment.

STATEMENT OF FACTS

I.

THE PROSECUTION'S CASE

On December 18, 2023, at about 10:45 p.m., Fullerton Police Officer Mathew Levin and his partner Lloyd de Charmoy Bouchet were dispatched to a residential neighborhood in Fullerton in response to a call about a suspicious vehicle. Upon arrival, they spotted a white four-door sedan parked at the curb. There were two juveniles standing by the trunk of the car, one male and one female. And there were two male juveniles inside the car, one in the driver's seat and another—A.R., then age 16—in the right rear passenger seat.

While Levin contacted the two by the trunk, Bouchet and a backup officer approached the car from opposite sides. In doing so, they spotted an AR-15 assault rifle on the floorboard of the front passenger seat. The rifle was leaning up against the passenger seat, barrel side down, such that about a foot of the weapon was protruding above the seat cushion. According to Bouchet, the rifle was within arm's reach of where A.R. was sitting in the back of the car.

After removing A.R. and the driver from the car, the officers seized the rifle and discovered it had a large capacity magazine and a live

round in the chamber. The gun, however, did not have a serial number and was never checked for fingerprints. In searching the car, the officers also noticed several empty liquor bottles strewn throughout the vehicle. All four minors were arrested and booked for possession of the rifle.

## II.

### THE DEFENSE CASE

Testifying in his own defense, A.R. said the white sedan belonged to a friend, who picked him up at around five o'clock on the night in question. At that time, another friend of A.R. was sitting in the front passenger seat, so A.R. got in the right rear passenger seat. Their plan was to just drive around, hang out, and have a good time.

Over the course of the next five and a half hours, A.R. and his two friends washed the car both inside and out, went to a Walmart store, and visited a park in Anaheim. They also picked up a female friend, who had a bottle of liquor they drank and passed around in the car while they were driving around. After finishing the bottle, they went to the liquor store to get more alcohol before finally ending up in a residential neighborhood in Fullerton.

A.R. testified he was drunk by that time, but he sobered up when the police arrived and seized the rifle from the car. The seizure "shocked" A.R. because, until then, he had not noticed the weapon. Although he had been in the car for several hours, A.R. claimed he never saw the rifle or knew it was in the car because he was always sitting behind the front passenger seat while they were driving around.

A.R. did admit getting in and out of the vehicle several different times during that period. He also admitted looking into the front passenger

3

area when he first got in the car and while he and his friends were washing it later on. However, he insisted the rifle was not there during those times, and he had no idea how it got there.

## III.

### THE JUVENILE COURT'S RULING

The juvenile court did not find A.R.'s testimony credible. Given how long A.R. had been in the car that night, the court found it was unreasonable to believe he would not have realized there was an assault rifle sitting in plain view in the front seat area. And although there was no evidence who brought the rifle into the car or when they did so, the court determined there was sufficient evidence to conclude A.R. constructively possessed the weapon.

Therefore, the juvenile court sustained all three allegations against A.R., namely that he: 1) carried a loaded unregistered firearm in a vehicle [count 1]; 2) possessed a firearm as a minor [count 2]; and 3) possessed a large capacity magazine [count 3]. (Pen. Code, §§ 25850, subds. (a), (c)(6), 29610, subd. (a), 32310, subd. (c).) The court then declared A.R. a ward of the court and committed him to 90 days in a juvenile facility. This timely appeal followed.

### DISCUSSION

A.R.'s appeal is limited to counts 2 and 3. He contends there is insufficient evidence to support the juvenile court's ruling he possessed the rifle (and by extension the large capacity magazine attached to it) that was found in his friend's car. We disagree.

4

# I.

## STANDARD OF REVIEW

The standard of review for assessing the sufficiency of the evidence to support a criminal conviction is "highly deferential." (*People v. Lochtefeld* (2000) 77 Cal.App.4th 533, 538.) Our task is to review the record in the light most favorable to the judgment to determine whether it discloses substantial evidence of the defendant's guilt. (*People v. Alexander* (2010) 49 Cal.4th 846, 917.) Although the evidence must be reasonable, credible, and of solid value, we do not reweigh the evidence or reevaluate the credibility of the witnesses who testified at trial; rather, "'[w]e presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citation.] [¶] . . . "[I]f the circumstances reasonably justify the [trier of fact's] findings, the judgment may not be reversed simply because the circumstances might also reasonably be reconciled with a contrary finding."'" (*Ibid.*) "The conviction shall stand 'unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support [it].""'" (*People v. Cravens* (2012) 53 Cal.4th 500, 508.)

The same standard of review applies in cases involving juvenile defendants. (*In re V.V.* (2011) 51 Cal.4th 1020, 1026.) Whether an appeal involves the review of a criminal conviction or a juvenile court finding, the defendant "bears an enormous burden" in challenging the sufficiency of the evidence to support the trier of fact's decision. (*People v. Sanchez* (2003) 113 Cal.App.4th 325, 330.)

# II.

## LAW ON POSSESSION

A defendant's possession of a firearm may be actual, such as when the weapon is found on the defendant's person, or it may be

constructive. (*In re Charles G.* (2017) 14 Cal.App.5th 945, 951.) Constructive possession is established when the firearm is under the defendant's "dominion and control, either directly or through others." (*People v. Peña* (1999) 74 Cal.App.4th 1078, 1083–1084.) Therefore, the defendant can be convicted of a possession-related offense even if his right to exercise dominion and control over the contraband was shared with others. (*People v. Rushing* (1989) 209 Cal.App.3d 618, 622.)

As A.R. correctly notes, constructive possession cannot be inferred solely from the defendant's proximity to or opportunity to access a firearm, or from his knowledge of a firearm's presence in his vicinity. (*In re I.A.* (2020) 48 Cal.App.5th 767, 779.) These factors, however, logically bear on the issue of possession, and when they are present in a particular case, only slight additional evidence is needed to support a finding of constructive possession. (*People v. Rushing, supra,* 209 Cal.App.3d at p. 622; *People v. Zyduck* (1969) 270 Cal.App.2d 334, 336; *People v. Nieto* (1966) 247 Cal.App.2d 364, 368.)

### III.

### ANALYSIS

In this case, Officer Bouchet testified that when he spotted the rifle in the front passenger compartment of the car, it was within arm's reach of A.R. In fact, the gun's handle was protruding above the passenger seat cushion, making the weapon readily accessible to A.R., which is a factor supporting the juvenile court's finding he constructively possessed the rifle. (Compare *People v. Sifuentes* (2011) 195 Cal.App.4th 1410, 1417–1418 [reversing gun possession conviction where the subject firearm was under a

6

mattress in a motel room that defendant shared with three others and was not readily available for offensive or defensive purposes].)

A.R. not only had easy access to the rifle, the juvenile court found he falsely denied knowing about the weapon. This finding, which we may not second-guess (*People v. Brown* (2014) 59 Cal.4th 86, 106), is significant in two respects. First, from a factual perspective, it means we must presume A.R. knew there was a rifle located just feet from where he was sitting in his friend's car. Coupled with A.R.'s proximity and access to the rifle, this factual circumstance bolsters the juvenile court's finding on the possession issue. (*People v. Miranda* (2011) 192 Cal.App.4th 398, 410–411.)

Secondly, A.R.'s prevarication reflects a broader consciousness of guilt that undermines his assertion of innocence. (*People v. Beyah* (2009) 170 Cal.App.4th 1241, 1249; *People v. White* (1995) 35 Cal.App.4th 758, 772.) Indeed, when, as here, a defendant makes a false statement regarding the circumstances attendant to a charged offense, it may properly be inferred that he was trying to avoid responsibility for his guilty behavior. (*People v. Showers* (1968) 68 Cal.2d 639, 643; *People v. Jones* (2018) 26 Cal.App.5th 420, 441.)

A.R. would have us believe his case is like *People v. Stanford* (1959) 176 Cal.App.2d 388, in which the court ruled there was insufficient evidence to support the defendant's conviction for possession of narcotics. But in that case, the defendant was merely present in an area where the narcotics were found. There was nothing to suggest he had actual dominion and control over the drugs, which is why the court rejected the state's theory of constructive possession. (*Id*. at pp. 391–392.)

7

Here, in contrast, A.R. was not merely present in the area where the rifle was discovered. Rather, he was sitting within easy reach of the rifle, and he knew the weapon was located right there in the car with him. Furthermore, A.R. had been riding around in the car for several hours, drinking and hanging out with his friends. He even helped clean the car during the course of their extended outing. This indicates he had shared dominion and control with his fellow passengers over the interior of the vehicle, including the area in the front passenger seat where the rifle was found. There is no evidence of any limits being placed on his ability to access and/or control any of the items located in that area.

Adding A.R.'s false testimony into the equation, we are convinced the factual circumstances, although not overwhelming, constitute substantial evidence to support the juvenile court's finding he constructively possessed the rifle and its large capacity magazine. We therefore have no occasion to disturb the juvenile court's finding to that effect.

## DISPOSITION

The judgment is affirmed.


                    GOODING, J.

WE CONCUR:


MOTOIKE, ACTING P. J.


SCOTT, J.