Filed 1/18/24  P. v. Lewis CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>LEVAUGHN QUINCE LEWIS,<br><br>    Defendant and Appellant. | D082756<br><br><br>(Super. Ct. No. FSB14191) |

APPEAL from a judgment of the Superior Court of San Bernardino, Gregory S. Tavill, Judge.  Affirmed.

Thomas Owen, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Andrew Mestman and Arlene Sevidal, Deputy Attorneys General, for Plaintiff and Respondent.

Levaughn Quince Lewis appeals from an order denying his Penal Code section 1172.6 petition for resentencing on a 1997 conviction for attempted

murder.[1]  The conviction arose out of an incident when Lewis and an accomplice were fleeing the scene of a robbery in Lewis's vehicle and his accomplice shot at a pursuing police officer.  After finding that Lewis made a prima facie showing for relief, the trial court held an evidentiary hearing and then denied the petition based on its own independent finding that Lewis was guilty beyond a reasonable doubt of aiding and abetting his accomplice with intent to kill.  On appeal, Lewis contends the trial court erred because (1) the jury convicted him of attempted murder on a now invalid natural and probable consequences theory of aiding and abetting, and (2) there is insufficient evidence to support the trial court's finding that he acted with intent to kill on a direct aiding and abetting theory.

We agree the record of conviction does not conclusively establish that the jury convicted Lewis of attempted murder on a direct aiding and abetting theory, rather than a natural and probable consequences theory.  The trial court therefore correctly ruled that Lewis made a prima facie showing.  Based on the record of the evidentiary hearing, however, we find sufficient evidence of intent to kill to support the trial court's independent finding of guilt on a direct aiding and abetting theory.  Accordingly, we affirm the order.

FACTUAL AND PROCEDURAL BACKGROUND

A. *Smart & Final Robbery*

Around 6:15 a.m. on April 4, 1997, Lewis and an accomplice later identified as Jonathan Smith committed an armed robbery of a Smart & Final store in San Bernardino.  Lewis and Smith both had guns and were wearing masks.  When the manager arrived to open the store, Lewis approached him and demanded that he let them in.  Inside, Lewis and Smith

---

[1]    Further statutory references are to the Penal Code unless otherwise stated.

forced the manager to give them money from the safe. According to the manager, Lewis seemed to be in charge. Before leaving the store, Lewis and Smith laid the manager face down and secured his arms behind his back with duct tape. Shortly after the robbery, a witness saw Lewis and Smith walking across the store parking lot with a third man later identified as Robert Bryant, who was wearing a security guard uniform.

B. *Grocery Outlet Robbery*

About an hour later, Bryant approached the owner of a Grocery Outlet store in San Bernardino. Bryant was wearing a security guard uniform. He asked the owner about picketers who normally arrived in front of the store in the morning. Bryant was driving a white Volkswagen Rabbit.

A neighbor who lived next door to the Grocery Outlet saw a turquoise or blue Datsun drive slowly by her house before parking near Bryant's Rabbit in the parking lot next to the Grocery Outlet. Bryant got out of the Rabbit and spoke to Lewis and Smith, who were in the Datsun. The neighbor then saw Lewis and Smith walk towards the store while pulling down the hoods of their sweatshirts. The neighbor suspected a robbery and called the police.

Around 7:30 a.m., Lewis and Smith walked into the Grocery Outlet before it was open and committed an armed robbery. They were both armed with firearms. Lewis entered the store first and pulled a ski mask over his face. He told Smith to pull his mask down as they entered the store. They walked toward the office, where Lewis ordered one employee to her knees and asked for the key to the safe. She directed Lewis to the store manager. After another employee started screaming and ran, Lewis pointed a gun at her, threatened to shoot her, and made her lie down on the floor. The manager and another employee came to her aid, but Lewis ordered them all to the floor. Lewis grabbed the manager from behind, put a gun to his head, and

3

threatened to "blow [his] fuckin' head off." Lewis also pointed his gun at another employee. Lewis took the manager to the office and made him open the safe and give him the cash. Lewis or Smith demanded more money and threatened that "somebody's going to get hurt."

In the meantime, Smith demanded money from the other employees. When one of them said he did not carry a wallet, Smith pointed his gun at him and replied, "Stop lying to me or I'll blow your brains out."

From inside the store, Smith used a walkie-talkie to speak to Bryant, who was still outside. Bryant said there was somebody in the parking lot. Smith told him to run the person over. Bryant said, "Just hurry up and get out." Lewis and Smith left the store and walked towards their Datsun. Bryant left first in the Rabbit, then Lewis and Smith left in the Datsun. Lewis and Smith got stuck in traffic and were unable to follow Bryant's vehicle.

C. *The Shooting*

In response to the neighbor's call, Officer David Green arrived at the Grocery Outlet just as Lewis and Smith were leaving in the Datsun. Officer Green was in uniform in a marked police car. Lewis was driving the Datsun and Smith was in the front passenger seat. Officer Green activated his lights and sirens and pursued the vehicle. The Datsun accelerated quickly, weaved in and out of traffic, ran stop signs and a red light, drove into oncoming traffic, and traveled at speeds over 80 miles per hour in a residential area by a school zone. The pursuit continued for four to five miles.

During the pursuit, Smith reached out the passenger window of the Datsun with a revolver and fired about five shots in rapid succession at Officer Green. According to Officer Green, Smith's revolver was pointed "at [him], at [his] vehicle," which was about one and a half car lengths behind the

4

Datsun. Officer Green believed Smith was trying to kill him. No shots hit Officer Green or his vehicle, but several shots blew holes in the Datsun's rear window. Smith also pointed the gun out the window in Officer Green's direction a second time, but fired no shots.

Officer Green continued to pursue the Datsun until it was unable to negotiate a turn and came to a stop. Lewis then fled on foot into an apartment complex, where he was later apprehended. Smith also got out of the car and pointed a gun at Officer Green, who shot and struck Smith. Smith fell to the ground. He survived the shooting but was paralyzed. The police found a loaded, semiautomatic firearm lying on the ground near Smith, which was different from the revolver he had used to shoot at Officer Green during the chase. The semiautomatic had one round in the chamber and numerous live bullets in the magazine. In the Datsun, the police recovered a revolver with a long barrel. One of the six cylinders was empty and the other five had expended bullet casings in them.

Bryant turned himself in about a month later.

D. *Criminal Proceeding*

The People charged Lewis and Bryant jointly in an amended information with six counts of robbery (§ 211) and one count of willful, deliberate, and premeditated attempted murder (§§ 21a, 187, subd. (a), 664, subd. (a)), and alleged firearm enhancements on each count (§§ 12022, subd. (a)(1), 12022.5, subd. (a)).[2] The People alleged that Lewis had a prior serious felony conviction (§ 667, subd. (a)) and a strike prior (§ 667, subds. (b)-(i)) and had served several prior prison terms (former § 667.5, subd. (b)).

---

[2]    Smith was charged in the initial accusatory pleading but not in later ones.

In a jury trial, the court instructed the jury on two theories of aiding and abetting: (1) direct aiding and abetting (CALJIC No. 3.01) and (2) the natural and probable consequences theory of aiding and abetting (CALJIC No. 3.02). The latter instruction stated that one who aids and abets a target crime is guilty not only of that crime, but also any other crime committed by a principal which is a natural and probable consequence of the target crime originally aided and abetted. More specifically, the instruction stated that an aider and abettor of a robbery is guilty of attempted murder if the latter was a natural and probable consequence of the former. Another special instruction stated: "In order to find that a defendant is guilty of attempted murder as an aider and abettor, the jury must find that the particular defendant had the intent to commit robbery before the attempted murder took place."

The court instructed the jury that the elements of the crime of attempted murder were (1) a person committed a direct but ineffectual act towards killing another human being; and (2) the person committing the act had a specific intent to kill.

The court instructed the jury with CALJIC No. 8.67 on premeditation and deliberation. This instruction stated that if the jury found a defendant guilty of attempted murder, it then had to determine whether the attempted murder was willful, deliberate, and premeditated. It defined "willful" as "intentional"; "deliberate" as "formed or arrived at or determined upon as a result of careful thought and weighing of considerations for and against the proposed course of action"; and "premeditated" as "considered beforehand." CALJIC No. 8.67 further stated: "To constitute willful, deliberate, and premeditated attempted murder, the would-be slayer must weigh and consider the question of killing and the reasons for and against such a choice

6

and, having in mind the consequences, decides to kill and makes a direct but ineffectual act to kill another human being."

The court also gave a special instruction as follows: "In order to find that a defendant who has been found guilty of attempted murder did so willfully, deliberately and premeditatedly, you must necessarily find that the defendant personally formed such a willful, deliberate, and premeditated intent before the attempted murder took place."[3]

In closing argument, the prosecutor argued to the jury that Lewis, Bryant, and Smith were "each responsible for each other's actions, regardless of what they planned in the course of their crimes." The prosecutor further argued: "You, as grown individuals, as adults, are responsible for each of your crimes of the other accomplice. [¶] So the fact that Smith did that firing on Officer Green and tried to kill him as they were leaving their last robbery, regardless of whether or not Bryant knew that, he is responsible for that. . . . The law says you are responsible for the natural and probable consequences of the actions of your accomplices."

The prosecutor also argued to the jury that the attempted murder was willful, deliberate, and premeditated because Smith committed the shooting intentionally and considered his actions beforehand. The prosecutor asserted that because Smith acted with premeditation and deliberation, "[t]hat action there causes everybody else to be responsible as being a natural and probable consequence of their crimes." The prosecutor did not argue that Lewis or

---

[3] This special instruction incorrectly stated the law. Earlier the same year as the shooting, the Court of Appeal had ruled that an aider and abettor may be convicted of willful, deliberate, and premeditated murder "even if he or she did not personally deliberate or premeditate." (*People v. Laster* (1997) 52 Cal.App.4th 1450, 1473.) The Supreme Court later agreed with *Laster*. (*People v. Lee* (2003) 31 Cal.4th 613, 627 (*Lee*).)

Bryant personally acted with a willful, deliberate, and premeditated intent to kill.

In her rebuttal argument, the prosecutor reminded the jury of "the law and instructions that you're going to receive about aiders and abettors and about crimes having occurred in the natural and probable consequences of the underlying target crime."

The jury found Lewis and Bryant not guilty of one of the robbery counts, guilty of the other five robbery counts, and guilty of attempted murder. As to both Lewis and Bryant, the jury found true the allegation that the attempted murder "was committed willfully, deliberately and with premeditation . . . ." The jury also found true the firearm enhancement allegations for the counts on which it convicted Lewis and Bryant. In a bench trial, the court found the allegations regarding Lewis's prior convictions true.

The trial court sentenced Lewis to a determinate term of 43 years and four months for the robberies, plus a consecutive term of 15 years and four months to life for the attempted murder. On appeal, the court affirmed the judgment, except for the correction of a clerical error in the abstract of judgment. (*People v. Lewis* (Sept. 21, 1999, E021985) [nonpub. opn.].)

E. *Section 1172.6 Petition and Prima Facie Hearing*

In April 2022, Lewis filed a form petition for resentencing under section 1172.6. His petition alleged all the required elements for a prima facie showing under section 1172.6, subdivision (a).

The trial court appointed counsel for Lewis. In response to the petition, the People asked the court to take judicial notice of the record and opinion in Lewis's direct appeal from the judgment of conviction. The People argued that Lewis was ineligible for relief as a matter of law because the jury necessarily found he acted with intent to kill by finding him guilty of willful,

8

deliberate, and premeditated attempted murder. After holding a prima facie hearing, however, the court issued an order to show cause and scheduled an evidentiary hearing on the petition.

F. *Section 1172.6 Evidentiary Hearing*

At the evidentiary hearing, the trial court considered the reporter's transcript of the trial and its own file and heard testimony from Lewis and arguments from counsel.

In his testimony, Lewis admitted participating in both robberies with Smith but denied that Bryant was involved. According to Lewis, he was armed with a semi-automatic Glock, which he had borrowed from Bryant earlier in the day. Smith was armed with a revolver. Lewis denied pointing his gun at anyone or threatening anyone in either of the robberies.

Lewis testified that after the robberies, he got into his Datsun and threw his Glock on the floor of the passenger seat. Smith got into the vehicle with him. Smith still had his revolver. As they drove away, Lewis realized that Officer Green was behind them. Lewis said to Smith, "The police is behind us." Lewis claimed he did not recall running any stop signs or red lights, swerving around vehicles, or driving into oncoming lanes during the pursuit. After Officer Green activated his lights and siren, Smith told Lewis that he was going to "create some space" between them and Officer Green. Lewis did not know what Smith meant and thought Smith was going to jump out of the car. Smith did not say anything about shooting at the police car, and Lewis claimed he did not know Smith was going to do so.

According to Lewis, he was focused on driving when he heard Smith fire the first gunshot. Lewis looked over and saw Smith holding the revolver out of the passenger window with the barrel pointed up. Lewis said to Smith, "What are you doing?" Smith fired multiple shots, but Lewis claimed he did

9

not know if Smith was aiming at Officer Green.  Lewis was aware that Smith's revolver only held five or six bullets.  Lewis eventually crashed his vehicle into a curb in an apartment complex.  Lewis jumped out and ran, leaving his Glock behind on the passenger floorboard.  Lewis denied that he left his Glock behind for Smith to try to shoot Officer Green.

At the conclusion of the evidentiary hearing, the court denied Lewis's petition for resentencing.  The court found beyond a reasonable doubt that Lewis acted with an intent to kill when he aided and abetted Smith in the willful, deliberate, and premeditated attempted murder of Officer Green.

G. *Issues on Appeal*

On appeal, Lewis argues the trial court erred in denying his petition because (1) the jury convicted him of attempted murder on a natural and probable consequences theory, and (2) there is insufficient evidence to support the trial court's finding that he acted with intent to kill.

In their respondent's brief, the People initially did not contest that Lewis made a prima facie showing for relief under section 1172.6, subdivision (c).  The People conceded that "the jury found appellant guilty of the attempted murder of Officer Green as an aider and abettor under a natural and probable consequences theory."

After completion of briefing, we requested supplemental briefing on two related issues: (1) In light of the special instruction requiring that the defendant must "personally" deliberate and premeditate, did the jury's true finding on the allegation that the attempted murder was willful, deliberate, and premeditated conclusively show Lewis aided and abetted the attempted murder with express malice, and therefore was ineligible for relief under section 1172.6 as a matter of law? and (2) If so, could this court affirm the order denying the petition on that alternative ground?

10

In response, the People argued in their supplemental brief that Lewis was ineligible for relief because, under the special instruction given on premeditation, the jury's premeditation finding meant that it must have found Lewis "personally" acted with the intent to kill. Notwithstanding their prior concession that Lewis was convicted on a natural and probable consequence theory, the People asserted "it is clear that the jury was not relying on the natural and probable consequences doctrine but instead concluded that appellant aided and abetted the attempted murder with the intent to kill Officer Green and personally formed such a willful, deliberate, and premeditated intent before the attempted murder took place." The People cited several Court of Appeal decisions for the proposition that a jury finding of intent to kill makes the petitioner ineligible for relief as a matter of law.

## DISCUSSION

### I

We begin by considering the threshold eligibility issue we raised in our request for supplemental briefing. This presents a question of law subject to de novo review. (*People v. Patton* (2023) 89 Cal.App.5th 649, 656.)

A. *Governing Law*

Effective January 1, 2019, Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill No. 1437) significantly limited the scope of California's felony murder rule and eliminated liability for murder under the natural and probable consequences doctrine through two key provisions. (Stats. 2018, ch. 1015, § 1, subd. (f); see *People v. Strong* (2022) 13 Cal.5th 698, 707–708 (*Strong*).) First, Senate Bill No. 1437 amended section 189 so that "[d]efendants who were neither actual killers nor acted with the intent to kill can be held liable for [felony] murder only if they were 'major participant[s]

11

in the underlying felony and acted with reckless indifference to human life[.]' " (*Strong*, at p. 708, quoting § 189, subd. (e)(3).) Second, it amended section 188 to provide that, when the felony-murder rule does not apply, a principal in the crime of murder can only be convicted where he or she acted "with malice aforethought," and "[m]alice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).) The latter change eliminated the natural and probable consequences theory of aiding and abetting a murder but did not affect liability for direct aiding and abetting. (*People v. Gentile* (2020) 10 Cal.5th 830, 843–851 (*Gentile*).)[4]

Senate Bill No. 1437 also established a new procedure to allow defendants who could not have been convicted under the law as amended to petition the sentencing court to vacate their murder conviction and resentence them on any remaining counts. (See § 1172.6, subd. (a); *Strong, supra*, 13 Cal.5th at pp. 708–709.) The process begins with the filing of a petition containing a declaration that all requirements for eligibility are met. (See § 1172.6, subd. (b)(1); *Strong*, at p. 708.) If the defendant's petition is facially valid, the trial court is permitted to examine the record of conviction after appointing counsel to assess whether it refutes the petitioner's claim of eligibility. (*People v. Lewis* (2021) 11 Cal.5th 952, 970–972 (*Lewis*).) Under section 1172.6, subdivision (c), the court may deny the petition at the prima facie stage if the record of conviction discloses that the petitioner is ineligible

---

4    California law recognizes two forms of liability for aiders and abettors: (1) directly aiding and abetting the perpetrator's commission of a target offense; or (2) the natural and probable consequences doctrine, which imposes liability on a defendant for a nontarget offense committed by an accomplice as a natural and probable consequence of a target offense the defendant directly aided and abetted. (*Gentile, supra*, 10 Cal.5th at pp. 843–844.) Senate Bill No. 1437 eliminated the latter theory of liability for murder, but not the former. (*Gentile*, at pp. 843–851.)

for relief as a matter of law. (*Lewis*, at pp. 960, 971.) Otherwise, the court must issue an order to show cause and hold an evidentiary hearing under section 1172.6, subdivision (d) to determine whether to vacate the murder conviction, recall the sentence, and resentence the petitioner on any remaining counts. (*Id.* at p. 960.)

One of the requirements for the prima facie showing is that the petitioner "could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189" made by Senate Bill No. 1437. (§ 1172.6, subd. (a)(3).) Accordingly, a court may deny the petition at the prima facie stage if the record of conviction conclusively establishes that the petitioner was convicted on a theory not affected by Senate Bill No. 1437. (See, e.g., *People v. Williams* (2022) 86 Cal.App.5th 1244, 1257–1258; *People v. Harden* (2022) 81 Cal.App.5th 45, 47–48, 59–60.)

Effective January 1, 2022, Senate Bill No. 775 (2020–2021 Reg. Sess.) (Senate Bill No. 775) amended section 1172.6. As relevant here, the amendment expanded eligibility for resentencing to include defendants convicted of attempted murder under the natural and probable consequences doctrine. (§ 1172.6, subd. (a).)

Senate Bill No. 775 further clarified the governing procedures for the prima facie hearing under section 1172.6, subdivision (c) and the evidentiary hearing under subdivision (d). For a petition satisfying the basic pleading requirements, the court must appoint counsel, permit briefing, and conduct an initial hearing under subdivision (c) to determine whether the petitioner has made a prima facie case for relief, and if so, issue an order to show cause. (§ 1172.6, subds. (b)(3), (c).) After issuance of an order to show cause, the court must conduct an evidentiary hearing under subdivision (d) to determine whether the petitioner is entitled to relief. At the evidentiary hearing, the

13

burden is "on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder" under California law as amended.  (§ 1172.6, subd. (d).)

B. *Analysis*

As noted, the People argue in their supplemental brief that Lewis is ineligible for relief as a matter of law because of the jury's true finding on the allegation that the attempted murder was committed willfully, deliberately, and with premeditation.  Based on the special premeditation instruction given to the jury, the People assert that the jury necessarily found Lewis "personally" acted with a premeditated intent to kill and convicted him on a direct aiding and abetting theory, rather than a natural and probable consequences theory.

We reject this argument for two reasons.  First, the prosecutor's closing argument and the jury's verdict as to co-defendant Bryant indicate that the jury likely applied the natural and probable consequences doctrine in finding true the allegations of premeditation and deliberation.  The prosecutor only argued to the jury that the shooter (Smith) premeditated and deliberated, and she contended that Lewis and Bryant were equally liable for Smith's premeditation and deliberation on a natural and probable consequences theory.  The prosecutor never argued that Lewis or Bryant personally premeditated the attempted murder.  Moreover, the jury found true the premeditation allegation as to Bryant, even though Bryant was not present in the Datsun and had no way of knowing the police would show up and give chase.

There is simply no factual support in the record for a finding that Bryant *personally* premeditated the attempted murder.  Unless the jury disregarded the evidence, the only way it could have found premeditation as

14

to Bryant is by applying the prosecutor's theory that Smith's commission of a premeditated attempted murder was a natural and probable consequence of Bryant's knowing participation in the robberies. And because the prosecutor argued the same natural and probable consequences theory of premeditation as to Lewis, we cannot definitively rule out the possibility that the jury applied the same theory to him.

The standard CALJIC instruction given on premeditation also could have contributed to the jury's acceptance of the prosecutor's theory. In contrast to the erroneous special instruction, CALJIC No. 8.67 informed the jury that the "*would-be slayer* must weigh and consider the question of killing and the reasons for and against such a choice . . . ." (Italics added.) Consistent with the prosecutor's argument, the jury could have concluded from this instruction that only Smith as the "would-be-slayer" had to deliberate and premeditate the attempted murder. (See *People v. Whitson* (2022) 79 Cal.App.5th 22, 33 [finding based on the same language of CALJIC No. 8.67 that the jury could have considered the "would-be slayer" to be the actual shooter in a drive-by shooting rather than the vehicle driver; thus, the jury's convictions of the driver for premeditated, attempted murder did not establish that the jury found the driver himself harbored an intent to kill].)

As phrased, the verdict form also did not necessarily require a finding that Lewis or Bryant personally premeditated and deliberated the attempted murder. As to this particular finding, the verdict form was phrased in the passive voice—allowing the jury to make a true finding against Lewis or Bryant by concluding that the attempted murder "*was committed* willfully, deliberately, and with premeditation" by Smith as the would-be slayer. (Italics added.) For all these reasons, the jury could have both convicted Lewis and Bryant of attempted murder and found true the premeditation

15

allegations against them on a natural and probable consequences theory—as the prosecutor explicitly urged the jury to do.

Second, even if the jury did find that Lewis personally harbored a willful, deliberate, and premeditated intent to kill, that would not be enough to refute his allegations of eligibility under our Supreme Court's recent decision in *People v. Curiel* (2023) 15 Cal.5th 443 (*Curiel*). In *Curiel*, the defendant was convicted of first-degree murder as an aider and abettor, and the jury also found true a gang-murder special circumstance, which required a finding of intent to kill. At trial, the court instructed on both direct aiding and abetting and the natural and probable consequences theory of aiding and abetting. (*Id*. at pp. 445–446.) The defendant argued that he was eligible for relief under section 1172.6 because the jury could have convicted him of murder based on a natural and probable consequences theory. However, the People argued that the jury's finding of intent to kill made Curiel ineligible for relief as a matter of law. The Supreme Court granted review "to consider the effect of the jury's true finding on the gang-murder special circumstance, *specifically its finding that Curiel intended to kill*, on his ability to state a prima facie case for relief under Senate Bill 1437." (*Id*. at pp. 440–441, italics added.)

The Supreme Court concluded that "[t]he jury's finding of intent to kill does not, itself, conclusively establish that Curiel is ineligible for relief." (*Curiel, supra*, 15 Cal.5th at p. 441.) To refute the allegations of a section 1172.6 petition at the prima facie stage, the record of conviction must conclusively establish that the jury necessarily made findings on every element of a still valid theory of murder. However, the jury's finding of intent to kill alone did not "cover all of the required elements" of direct aiding and abetting liability. (*Id*. at p. 463.) "For example, the mens rea required of a

direct aider and abettor includes knowledge of the perpetrator's intent to commit an unlawful act constituting the offense and the intent to aid the perpetrator in its commission. [Citation.] The jury's verdicts, viewed in the light of the court's jury instructions, do not show the jury necessarily made factual findings covering these elements." (*Id.* at p. 441; see also *id.* at p. 467 ["we conclude the jury did not necessarily find the requisite mens rea for direct aiding and abetting liability"].)

The Supreme Court further explained: "Intent to kill itself does not establish a sufficient mens rea regarding a murder or life-endangering conduct that the aider and abettor has no intent to aid or encourage—and that the aider and abettor does not even subjectively know will occur. Indeed, a defendant could act with intent to kill but at the same time believe the actual perpetrator could never risk harm to another human being—and be genuinely surprised when the actual perpetrator commits a life-endangering act." (*Curiel, supra*, 15 Cal.5th at p. 470.)

The Supreme Court acknowledged that "this scenario—where a defendant is liable for murder under the natural and probable consequences doctrine, and acts with malice aforethought, but is *not* liable as a direct aider and abettor—[is] 'quite narrow' and relevant only to a 'very small set of cases.' " (*Curiel, supra*, 15 Cal.5th at p. 470.) "But the question is not whether it is *likely* a defendant could have felt and acted in such a way, but whether the court's jury instructions foreclose that possibility *as a matter of law*. Only in the latter scenario would a trial court be permitted to deny a defendant's section 1172.6 petition at the prima facie stage." (*Ibid.*)

*Curiel* is on all fours here. As in *Curiel*, Lewis was prosecuted as an aider and abettor, and the trial court instructed the jury on both direct aiding and abetting and the natural and probable consequences theory of aiding and

17

abetting. The latter theory allowed the jury to convict Lewis of an attempted murder committed by Smith if it was a natural and probable consequence of Lewis's knowing participation in the target crime of robbery. Thus, the jury was permitted to find Lewis guilty of attempted murder on a now invalid natural and probable consequences theory. Moreover, the instructions required the jury to find Lewis guilty of attempted murder *before* it decided whether the attempted murder was willful, deliberate, and premeditated. Accordingly, the jury could have found Lewis guilty of the attempted murder on a natural and probable consequences theory before it even considered the allegation that the attempted murder was willful, deliberate, and premeditated.

Under *Curiel*, Lewis met the threshold requirements for relief even if the jury did make a finding that he personally formed a willful, deliberate, and premeditated intent to kill. Such a premeditation finding would not establish that the jury made all the required findings for direct aiding and abetting liability. Specifically, as in *Curiel*, it would not establish that the jury made findings that Lewis knew Smith "intend[ed] to commit the murder or life-endangering act" or that Lewis "intend[ed] to aid [Smith] in its commission." (*Curiel, supra*, 15 Cal.5th at p. 468.) Even assuming a jury finding that Lewis personally formed a willful, deliberate, and premeditated intent to kill, therefore, "the jury did not necessarily find the requisite mens rea for direct aiding and abetting liability." (*Id.* at p. 467.)

As *Curiel* teaches, it is immaterial at the prima facie stage how probable or improbable it is that Lewis harbored a premeditated intent to kill yet did not have the necessary mens rea for liability as a direct aider and abettor of Smith's commission of attempted murder. The question is not whether this scenario is probable, "but whether the court's jury instructions

18

foreclose that possibility *as a matter of law.*" (*Curiel, supra,* 15 Cal.5th at p. 470.) As in *Curiel,* the jury instructions and verdicts do not foreclose this possibility as a matter of law.

For these reasons, the record of conviction does not conclusively establish that the jury convicted Lewis of attempted murder on a direct aiding and abetting theory, rather than the natural and probable consequences theory, or that the jury necessarily found all the required elements of direct aiding and abetting liability. Accordingly, the trial court correctly found that Lewis had established a prima facie case for relief under section 1172.6.

## II

At the conclusion of the evidentiary hearing, the trial court found beyond a reasonable doubt that Lewis was guilty of attempted murder on a direct aiding and abetting theory. Lewis argues there is insufficient evidence to support the trial court's finding that he harbored an intent to kill.[5] We conclude there is sufficient evidence of Lewis's intent to kill to support the trial court's finding of guilt on a direct aiding and abetting theory.

A. *Governing Law*

In a section 1172.6 appeal after an evidentiary hearing, we review the trial court's factual findings for substantial evidence. (*People v. Guiffreda* (2023) 87 Cal.App.5th 112, 125 (*Guiffreda*).) "Our job on review is different from the trial judge's job in deciding the petition. While the trial judge must review all the relevant evidence, evaluate and resolve contradictions, and make determinations as to credibility, all under the reasonable doubt

---

[5] Lewis does not challenge the sufficiency of evidence to support any of the other elements of liability for attempted murder on a direct aiding and abetting theory, including that Smith intended to kill Officer Green.

19

standard, our job is to determine whether there is any substantial evidence, contradicted or uncontradicted, to support a rational fact finder's findings beyond a reasonable doubt." (*People v. Clements* (2022) 75 Cal.App.5th 276, 298.)

We will not reverse unless there is no hypothesis upon which sufficient substantial evidence exists to support the trial court's decision. (*Guiffreda, supra*, 87 Cal.App.5th at p. 125.) We must presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. (*Ibid.*) " 'The same standard applies when the conviction rests primarily on circumstantial evidence.' " (*Ibid.*) " 'An appellate court must accept logical inferences that the [trier of fact] might have drawn from the circumstantial evidence.' " (*Ibid.*)

A person aids and abets the commission of a crime when (1) with knowledge of the direct perpetrator's intent to commit the crime and (2) with an intent to assist in committing the crime, (3) he in fact assists the commission of the crime. (*People v. Perez* (2005) 35 Cal.4th 1219, 1225; *People v. McCoy* (2001) 25 Cal.4th 1111, 1117.) The defendant must not only know the direct perpetrator's intent, he must share in that intent. Express malice or intent to kill is therefore a required element of liability for attempted murder on a direct aiding and abetting theory. (*Lee, supra*, 31 Cal.4th at p. 624; *People v. Beeman* (1984) 35 Cal.3d 547, 560.) "Direct evidence of intent to kill is rare, and ordinarily the intent to kill must be inferred from the statements and actions of the defendant and the circumstances surrounding the crime." (*People v. Canizales* (2019) 7 Cal.5th 591, 602.)

B. *Analysis*

Drawing all reasonable inferences in support of the trial court's order, we conclude there is sufficient circumstantial evidence to support its finding that Lewis acted with an intent to kill Officer Green.

While mere presence during a crime is insufficient by itself to establish aiding and abetting, it can be considered as one relevant factor, along with conduct before, during, and after the offense. (*People v. Campbell* (1994) 25 Cal.App.4th 402, 409.) We therefore consider the totality of circumstances before, during, and after the shooting.

Immediately before the shooting, Lewis and Smith committed two armed robberies together. During the second robbery, Lewis threatened to kill the victims while pointing a loaded semiautomatic firearm at them, including by putting a gun to the manager's head and threatening to "blow his fuckin' head off." The fact that the gun was loaded supports the inference that these were not just empty threats, and that Lewis was prepared to use the gun to shoot anyone who resisted or interfered. (Cf. *People v. Lee* (2011) 51 Cal.4th 620, 636 [evidence that "defendant brought a loaded handgun with him" indicated "he had considered the possibility of a violent encounter"].) Smith also made a similar threat during the second robbery when he pointed his loaded gun at an employee and said, "Stop lying to me or I'll blow your brains out." Lewis was aware that Smith was armed, which indicates he knew Smith was also capable of carrying out his threat. (See *People v. Garcia* (2008) 168 Cal.App.4th 261, 274 (*Garcia*) [defendant's awareness that the shooter had a gun in his backpack supported inference he had requisite state of mind to be culpable as an aider and abettor].) The trial court could reasonably conclude that these threats to kill—made by both men while

pointing loaded firearms at their victims—evidenced a mutual willingness to use lethal force if necessary to accomplish their criminal objectives.

Additionally, there was evidence that Lewis played a lead role in the robberies, from which the trial court could reasonably infer that Smith would not have started shooting at Officer Green from Lewis's vehicle without Lewis's knowledge and consent. A witness testified that Lewis appeared to be "in charge," and there was other testimony that Lewis was the first to enter the stores, he was the first to engage with employees during the robberies, and he instructed Smith to pull his mask down. Evidence showing that Smith acted at Lewis's direction during the robberies supports the inference that Smith was acting at Lewis's direction or with his consent during the shooting. (Cf. *Garcia, supra*, 168 Cal.App.4th at p. 274 [evidence that defendant "did most of the talking in the confrontation leading to the shooting," and whispered something to the shooter shortly before he opened fire, supported finding the defendant encouraged the shooter and shared in his intent to kill].)

Lewis's conduct during the pursuit further supports a finding that he shared Smith's intent to kill Officer Green. Lewis was driving recklessly and at high speeds without regard for the danger to other people's lives, including Officer Green's. Lewis admitted that during the car chase, he and Smith discussed the fact that Officer Green was pursuing them, and Smith told him something about what he intended to do. The trial court could reasonably discredit Lewis's account of what Smith said he was going to do (i.e., "create some space" between them and Officer Green) and/or disbelieve Lewis's claimed lack of understanding of Smith's true intentions. (See *People v. Ewing* (2016) 244 Cal.App.4th 359, 378 ["[A] rational trier of fact may disbelieve those portions of a defendant's statements that are obviously self-

22

serving."].)  The fact that Smith told Lewis something about what he intended to do and then proceeded to shoot at Officer Green supports a reasonable inference that Lewis knew of and shared Smith's intent.  Indeed, it was "not necessary that [Smith] expressly communicate his criminal purpose" to Lewis since that purpose may have been "apparent from the circumstances."  (*People v. Nguyen* (1993) 21 Cal.App.4th 518, 531–532.) Lewis admitted he wanted to escape apprehension because he had just committed two robberies with Smith; he knew Smith shared the same goal and was armed with a loaded revolver; it would have been apparent what Smith was up to when he rolled down the window and pointed his gun at Officer Green; and Lewis would have had the same motive as Smith to kill Officer Green.  (See *People v. Smith* (2005) 37 Cal.4th 733, 740–741 [although motive is not an element of murder or attempted murder, evidence of motive is often probative of intent to kill].)

Lewis also did nothing to prevent or dissuade Smith from shooting at Officer Green the first time or from pointing his gun out the window a second time.  Lewis could have ended the chase by pulling over at any time, or he could have made some other effort to stop Smith.  His failure to do so is circumstantial evidence that he shared Smith's intent to kill Officer Green to avoid apprehension.  (See *People v. Jones* (1980) 108 Cal.App.3d 9, 15 (*Jones*) ["failure to take steps to attempt to prevent the commission of the crime" as well as companionship and flight "are probative of whether one is an aider and abettor"].)

Finally, the trial court could reasonably conclude that Lewis was untruthful in his testimony at the evidentiary hearing.  For example, Lewis directly contradicted the trial testimony of the robbery victims by denying that he pointed his gun at anyone or threatened anyone during the robberies.

The trial court could likewise conclude that Lewis was being untruthful when he denied knowledge of Smith's intention to shoot at Officer Green. (See *People v. Harris* (2013) 57 Cal.4th 804, 849 [" ' "[I]t is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends." ' "].) Moreover, a defendant's false testimony supports an inference of consciousness of guilt. (*People v. Beyah* (2009) 170 Cal.App.4th 1241, 1249–1250.)

In sum, drawing all reasonable inferences in support of the trial court's order based on the totality of circumstances, there is sufficient circumstantial evidence to support a finding that Lewis knew about, and shared in, Smith's intent to kill Officer Green to escape apprehension for the armed robberies they had just committed together. We therefore conclude that Lewis has failed to demonstrate any error in the trial court's finding that he was guilty beyond a reasonable doubt of attempted murder on a direct aiding and abetting theory.

DISPOSITION

The order denying the petition for resentencing under section 1172.6 is affirmed.

BUCHANAN, J.

I CONCUR:


DO, J.

24

IRION, Acting P. J., Concurring and Dissenting.

I agree with the majority's result but not its reasoning. I conclude the record of conviction conclusively shows Levaughn Quince Lewis was ineligible for relief under Penal Code section 1172.6 as a matter of law, and for that reason the trial court correctly denied his petition for resentencing. (See *People v. Lewis* (2021) 11 Cal.5th 952, 970–972 [court may deny petition at prima facie review stage if record of conviction shows petitioner is ineligible for relief]; *People v. Cortes* (2022) 75 Cal.App.5th 198, 204 (*Cortes*) ["we may affirm a ruling that is correct in law on any ground"].)

Lewis was convicted of willful, deliberate, and premeditated attempted murder for his involvement in the shooting at Officer David Green by Jonathan Smith as Lewis and Smith fled the scene of a robbery. The only type of attempted murder conviction from which Penal Code section 1172.6 authorizes relief is one based on the natural and probable consequences doctrine. (*Id.*, subd. (a); *People v. Coley* (2022) 77 Cal.App.5th 539, 548.) Relief is not available for an attempted murder conviction based on direct aiding and abetting, which remains a valid theory of liability after elimination of the natural and probable consequences theory by legislative changes that took effect on January 1, 2019. (*Coley*, at p. 548.) The jury instructions and verdicts show Lewis was found guilty as a direct aider and abettor, not based on the natural and probable consequences doctrine.

The jury was instructed that a person aids and abets a crime when, with knowledge of the perpetrator's unlawful purpose and with intent to commit or to encourage or to facilitate commission of the crime, the person "[b]y act or advice aids, promotes, encourages or instigates the commission of the crime." The instruction on the natural and probable consequences doctrine told the jury that an aider and abettor can be guilty of a crime

committed by a principal that is a natural and probable consequence of the crime originally aided and abetted; and to find Lewis guilty of robbery *and attempted murder*, the jury had to be satisfied beyond a reasonable doubt that those crimes were committed and that "the defendant aided and abetted *those crime[s]*." (Italics added.) The instruction on willful, deliberate, and premeditated attempted murder advised the jury that such an attempted murder had to be "intentional" and required "a clear, deliberate intent to kill." A special instruction told the jury that "to find that a defendant who has been found guilty of attempted murder did so willfully, deliberately and premeditatedly, [the jury] must necessarily find that the defendant *personally* formed such a willful, deliberate and premeditated intent before the attempted murder took place." The instruction on the allegation the attempted murder victim was a police officer stated "[t]he defendant either attempted a willful, deliberate and premeditated murder or an attempted murder," and knew or should have known the victim was a police officer performing his duties. The jury found Lewis guilty of attempted murder; found true the allegation that "as to [him], the aforesaid attempted murder was committed willfully, deliberately and with premeditation"; and found true the allegation the victim was a police officer.

Under the instructions the jury received, which I must presume it understood and followed (*People v. Centeno* (2014) 60 Cal.4th 659, 676; *Cortes, supra*, 75 Cal.App.5th at pp. 205–206), the jury could not have returned those verdicts based on the natural and probable consequences doctrine. Under that doctrine, "an accomplice is guilty not only of the offense he or she directly aided or abetted (i.e., the target offense), but also of any other offense committed by the direct perpetrator that was the 'natural and probable consequence' of the crime the accomplice aided and abetted (i.e., the

2

nontarget offense)." (*People v. Gentile* (2020) 10 Cal.5th 830, 843.) The doctrine "imposes vicarious liability for any offense committed by the direct perpetrator that is a natural and probable consequence of the target offense. [Citation.] Because the nontarget offense is unintended, the mens rea of the aider and abettor with respect to that offense is irrelevant and culpability is imposed simply because a reasonable person could have foreseen the commission of the nontarget crime." (*People v. Canizales* (2011) 197 Cal.App.4th 832, 852.) Significantly, the jury was *not* instructed it could find Lewis guilty of willful, deliberate, and premeditated attempted murder based on Smith's commission of that crime *without regard to Lewis's participation therein*. On the contrary, the trial court erroneously instructed the jury it had to find Lewis aided and abetted *the attempted murder* to find him guilty of that offense under the natural and probable consequences doctrine and to find true the allegation the victim was a police officer. The court also erroneously instructed the jury that to find the murder was willful, deliberate, and premeditated, it had to find he *personally* formed that mental state before the attempted murder occurred. These instructional errors, all favorable to Lewis, effectively removed from the jury's consideration the natural and probable consequences doctrine as a theory for finding him guilty of willful, deliberate, and premeditated attempted murder, and required it to find he intentionally aided and abetted the shooting at Green with a clear and deliberate intent to kill.

Because under the instructions the jury *actually received* its verdicts "cover all of the required elements" of attempted murder under a "valid theory" (*People v. Curiel* (2023) 15 Cal.5th 433, 463), namely, direct aiding and abetting, Lewis was ineligible for relief under Penal Code section 1172.6 as a matter of law. (See *Cortes, supra*, 75 Cal.App.5th at p. 205 [petitioner

was ineligible for relief when "jury was not instructed on any theory of liability for . . . attempted murder that required that malice be imputed to him"].)  The trial court therefore correctly denied his petition for resentencing.  I concur only in the judgment affirming the denial order.


IRION, Acting P. J.

4